UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY COSBY,

        Plaintiff,

   v.

AUTOZONE, INC., JIM KULBACKI
and DOES 1-100, inclusive,

        Defendants.

_____/

NO. CIV. S-08-505 LKK/DAD

O R D E R

    This case concerns the award of fees to plaintiff after a jury trial. For the reasons discussed below, the court intends to award fees to plaintiff in the manner described below. The court does not calculate the amount at this time, however, because a issue remains that will affect the final award.

**I. BACKGROUND**

    On January 26, 2010, the court began trial in the above captioned case. Plaintiff tried several claims under California's Fair Employment and Housing Act ("FEHA"). On

1

February 12, 2010, the jury reached a verdict. The jury found for plaintiff on his claims of failure to engage in the interactive process of accommodation and failure to provide reasonable accommodation. The jury awarded plaintiff $174,000 in economic losses and $1,326,000 in mental suffering damages. No punitive damages were awarded. The jury found for defendant on the remaining claims of failure to prevent discrimination based upon his physical disability and retaliation for engaging in protected activity, and disability discrimination-disparate treatment.

On April 21, 2010, plaintiff moved for attorneys' fees and costs. On May 10, 2010, defendant filed an opposition to plaintiff's motion. This motion was heard on May 24, 2010. Subsequently, the court ordered supplemental briefing on the questions of (1) whether and/or under what conditions may the court reduce the fees awarded to plaintiff by a percentage of fees billed and (2) whether Perdue v. Kenny A., 559 U.S. __ (2010), should apply to the calculation of fees in the instant case. The parties filed supplemental briefing on these questions.

## II. STANDARD

Under FEHA, "the court, in its discretion, may award to the prevailing party reasonable attorneys' fees and costs . . . ." Cal. Gov't Code § 12965(b). The Americans with Disabilities Act ("ADA"), the federal analog for disability claims under FEHA, provides for an identical test. 42 U.S.C. § 2000e-5(a) ("In any

1  action or proceeding under this title, the court, in its

2  discretion, may allow the prevailing party . . . to pay a

3  reasonable attorney's fee as part of the costs. . . ."); see

4  also, Asberry v. City of Sacramento/Sanitation Dept., No.

5  S-01-2343 LKK/PAN, 2004 WL 3636054, *1 (E.D. Cal. Apr. 5, 2004)

6  (applying same test for fees under ADA and FEHA). The propriety

7  of awarding attorney's fees turns on three questions: (1) Is the

8  party to whom attorney fees will be awarded a prevailing party?;

9  (2) Should the court exercise its discretion to award the fees?;

10  and (3) What is a reasonable award?

11       The Supreme Court has articulated the standard for a

12  finding of "prevailing party" as whether the party has

13  "succeed[ed] on any significant issue in litigation which

14  achieves some of the benefit the parties sought in bringing

15  suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (citing

16  Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir. 1978)). The Ninth

17  Circuit, in discussing whether a party has achieved "prevailing"

18  status, has noted that a party can achieve that status by

19  establishing a "clear, causal relationship between the

20  litigation brought and the practical outcome realized."

21  Rutherford v. Pitchess, 713 F.2d 1416, 1419 (9th Cir. 1983).

22       Although the statutes use the terms "discretion" and "may,"

23  courts in interpreting the statutes have looked to the

24  legislative history and concluded that in the absence of special

25  circumstances, a prevailing party should ordinarily recover

26  attorney fees. Toussaint v. McCarthy, 826 F.2d 901 (9th Cir.

1  1987); Cummings v. Benco Bldg. Serv's, 11 Cal. App. 4th 1383,

2  1387 (1992).

3      Both federal and California courts have adopted the

4  "lodestar" method for calculating attorney's fees. Hensley, 461

5  U.S. at 433; Serrano v. Priest, 20 Cal. 3d 25, 48-49 (1977). To

6  determine the appropriate fee amount, the court multiplies the

7  number of hours reasonably expended in the litigation by a

8  reasonable hourly rate. Id. However, California's law of

9  attorneys' fee awards under FEHA has diverged from federal law

10  as developed under civil rights fee-shifting statutes in that

11  the use of multipliers in calculating fees under 42 U.S.C. §

12  1988 does not control fee awards under FEHA. Flannery v. Calif.

13  Highway Patrol., 61 Cal. App. 4th 629, 645-46 (1998) (stating

14  that there is no evidence that the California legislature

15  "intended or intends federal standards to apply to limit the

16  trial court's exercise of discretion in calculating the amount

17  of reasonable attorney fees under California fee-shifting

18  statutes generally or under the FEHA provision in particular").

19      Under California law, after developing the touchstone

20  lodestar amount, the trial court may then augment or reduce the

21  fee award in light of a number of relevant factors. Nichols v.

22  City of Taft, 155 Cal. App. 4th 1233, 1240 (2007) (citing

23  Serrano v. Priest, 20 Cal. 3d 25, 48-49 (1977)); Vo v. Las

24  Virgenes Municipal Water Dist., 79 Cal. App. 4th 440, 445-446

25  (2000). Those factors include: ". . .(1) the novelty and

26  difficulty of the questions involved, (2) the skill displayed in

4

1  presenting them, (3) the extent to which the nature of the

2  litigation precluded other employment by the attorneys, [and]

3  (4) the contingent nature of the fee award. The purpose of such

4  adjustment is to fix a fee at the fair market value for the

5  particular action." <u>Nichols</u>, 155 Cal. App. 4th at 1240 (quoting

6  <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001)) (internal

7  citations omitted).[1] "Of course, the trial court is not required

8  to include a fee enhancement to the basic lodestar figure for

9  contingent risk, exceptional skill, or other factors, although

10 it retains discretion to do so in the appropriate case. . . . In

11 each case, the trial court should . . . consider the degree to

12 which the relevant market compensates for contingency risk,

13 extraordinary skill, or other factors under <u>Serrano [v. Priest]</u>.

14 . . . [A] trial court should not consider these factors to the

15 extent they are already encompassed within the lodestar."

16 <u>Ketchum</u>, 24 Cal. 4th at 1138.

### III. ANALYSIS

#### A.   Prevailing Party

19 The jury awarded judgment to plaintiff in two of his

20 claims. It also awarded plaintiff damages in an amount of $1.5

---

22  [1] In <u>Serrano v. Priest</u>, the California Supreme Court listed
23 relevant factors that may weigh in favor of increasing or
    decreasing the lodestar figure. 20 Cal. 3d at 49. The list is not
24 exclusive and a court may determine that other factors are relevant
    in a particular case. <u>See Thayer v. Wells Fargo Bank</u>, 92 Cal. App.
25 4th 819, 834 (2001) (stating that there is "no hard-and-fast rule
    limiting the factors that may justify an exercise of judicial
26 discretion to increase or decrease a lodestar calculation").

million. While the jury did award judgment to defendant in two claims, it is clear that plaintiff is a prevailing party. In fact, defendant does not oppose plaintiff's motion on this ground.

**B.   Discretionary Award**

The court also finds that it may properly exercise its discretion to award fees. No special circumstances exist here to suggest otherwise.

**C.   Reasonable Fee**

**1.   Attorney Billing Rate**

Plaintiff seeks to recover attorneys' fees at the following rates: (1) Trial Counsel Lawrance A. Bohm ("Bohm"), $375 per hour; (2) Joseph Earley, III ("Earley"), $400 per hour; and (3) Charles Moore ("Moore"), $450 per hour. Defendant only opposes the hourly rate for Charles Moore. However, the court finds both Earley's and Moore's hourly rates to be excessive. Specifically, there are no grounds for counsel who assisted trial counsel to bill at a rate higher than that for which trial counsel billed. For this reason, the court reduces Earley and Moore's hourly rates to $375.

**2.   Number of Hours**

**a.   Defendant's Arguments**

Defendant raises several concerns about the number of hours billed by plaintiff. First, defendant argues that it should not be responsible for any fees incurred due to inefficiencies resulting from Charles Moore's replacement of Joseph Earley, III

1   as co-counsel. Defendant does not, however identify any fees
2   that demonstrate such an inefficiency. Further, plaintiff argues
3   that there were no such inefficiencies. Accordingly, the court
4   finds that defendant is not entitled to a reduction in the
5   number of hours billed on this ground.

6        Second, defendant argues that there was no reason for both
7   Bohm and Earley to travel to Albuquerque, New Mexico to take the
8   deposition of Nicole McCollum. Plaintiff contends that it was
9   necessary for both counsel to attend this deposition because
10  "Earley's attendance was required to assist with preparation,
11  strategizing the day before as well as on the spot." Reply at 3-
12  4. Plaintiff continues to state that he reasonably believed that
13  he would require Earley's assistance "as a back up in case there
14  was any problem attending or completing the deposition" "[d]ue
15  to the remote location of the deposition." Plaintiff concludes
16  noting that defendant had two counsel at every deposition. The
17  court is not persuaded that two counsel were necessary at this
18  deposition. Plaintiff has not explained why the remote location
19  of the deposition in any way required the attendance of two
20  attorneys. Further, plaintiff has provided no information asidw
21  from geography as to why this deposition required two counsel
22  when every other deposition only required one. For this reason,
23  the court deducts the hours billed by Earley to attend this
24  deposition.

25       Third, defendants argue that it was unreasonable for Earley
26  to spend 16.5 hours accompanying a witness from Northern

1   California so that he could testify at trial. Plaintiff states

2   that it was necessary for Earley to do so because this witness

3   was suffering serious medical problems. Specifically, plaintiff

4   contends that the medical concerns "made interviewing and

5   preparing Mr. Gasero complicated and challenging." Plaintiff has

6   not, however, provided any indication that Earley was doing

7   legal work while accompanying this witness. In particular,

8   plaintiff has not demonstrated that a paralegal would not have

9   been capable of performing the same tasks as Earley. For this

10  reason, the court reduces Earley's lodestar for these 16.5 hours

11  to $100, the rate billed by paralegals.

12      Fourth, defendant argues that Bohm engaged in significant

13  "overkill" in his trial presentation. Specifically, defendant

14  contends that much of plaintiff's trial brief concerned matters

15  outside the scope of the trial and most of his exhibits were not

16  used in the case. The court finds that plaintiff's trial

17  preparation was not so excessive to cause a reduction in fees.

18  However, as described below, the fee request is reduced as a

19  result of numerous problematic time entries not identified by

20  defendant.

21      Fifth, defendant argues that many of the fees billed in

22  this case concerned work done in <u>Kell v. AutoZone</u>, and is

23  therefore not properly billed here. Defendant, however did not

24  identify which entries should be stricken on this grounds, but

25  rather challenges that the time spent on document review should

26  be reduced. The court is troubled by many time entries listed by

1  plaintiff which appear to be related to the <u>Kell</u> matter. These

2  include numerous telephone calls with Kell (<u>see, e.g.</u>, entries

3  dated 1/8/10, 1/10/10, 1/11/10, 1/14/10, 1/19/10, 1/21/10,

4  1/27/10, 2/2/10, 2/9/10). The court cannot determine from

5  plaintiff's fee petition whether he has double-billed work done

6  in <u>Kell</u> and in <u>Cosby</u>. Nonetheless, the court declines to reduce

7  plaintiffs' fees on this ground because the defendant and

8  counsel for defendant are identical in both cases and defendant

9  failed to identify any instances of double billing. The court

10  trusts, although somewhat reluctantly, that counsel for

11  defendant would have provided such evidence of double billing if

12  it existed.

13              **b.   The Court's Concerns**

14       There are several time entries in plaintiff's application

15  that cause the court serious concern. These include time entries

16  for events at the court where the court knows that plaintiff has

17  over-billed and several entries which appear to the court to be

18  unreasonable. "[T]rial courts must carefully review attorney

19  documentation of hours expended; 'padding' in the form of

20  inefficient or duplicative efforts is not subject to

21  compensation." <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001).

22  Even in civil rights cases, a trial court may "reduce the award

23  or deny one altogether" if the fee request "appears unreasonably

24  inflated." <u>Chavez v. City of Los Angeles</u>, 47 Cal. 4th 970, 990

25

26

1   (Cal. 2010) (quoting <u>Serrano v. Unruh</u>,[2] 32 Cal. 3d 621, 635

2   (1982)); <u>see also</u> <u>PLCM Group, Inc. v. Drexler</u>, 22 Cal. 4th 1084,

3   1095 (2000). Here, it appears that plaintiff's counsel spent

4   excessive time on various tasks related to the litigation, which

5   are described below. In an effort to compensate for the known

6   overbilling, duplication of effort as a result of having three

7   attorneys working on the case, as well as any additional

8   "padding" in the fee petition that the court was unable to

9   ascertain, the court will reduce plaintiff's fees by 10% across-

10  the board. <u>See</u> <u>Cal. Common Cause v. Duffy</u>, 200 Cal. App. 3d 730,

11  752-54 (1987) (reducing award by 50% based on duplication of

12  effort, requests for compensation for time spent on media

13  relations, and unnecessary adversarial "skirmishes"); <u>see also</u>

14  <u>Schwarz v. Secretary of Health & Human Services</u>, 73 F.3d 895,

15  905 (1995); <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1400 (9th Cir.

16  1992).

17                   **i.   Known Exaggerated Fee Requests**

18  **Bohm**

19

20  _____

21          [2] The California Supreme Court provided several examples of
    situations warranting such reductions. <u>Serrano</u>, 32 Cal. 3d 635 n.21
22  (citing <u>Copeland v. Marshall</u>, 641 F.2d 880, 902-903 (1979) (stating
    that compensation is unavailable for hours spent litigating issues
23  on which plaintiff did not prevail or where attorneys' efforts are
    unorganized or duplicative); <u>Gagne v. Maher</u>, 594 F.2d 336, 345
24  (1979) (finding that district court did not abuse its discretion
    by reducing fee award based on excessive time spent litigating a
25  relatively simple case); <u>Farris v. Cox</u>, 508 F. Supp. 222, 227 (N.D.
    Cal. 1981) (reducing fee award for "overreaching" on fee petition).

26

(1)  10/26/09: Attend final pretrial conference[3]: **1.1**
(2)  1/29/10: Attend Cosby trial: **8.0**
(3)  2/5/10: Attend Cosby trial: **8.0**
(4)  2/12/10: Attend trial for jury deliberation and verdict: **8.0**

**Moore**
(1)  1/28/10: Attendance at Cosby trial: **8.0**
(2)  1/29/10: Attendance at Cosby trial: **8.0**
(3)  2/5/10: Attendance at Cosby trial: **8.0**

**Torres (paralegal)**
(1)  1/28/10: Attend trial: **8.0**
(2)  1/29/10: Attend trial: **8.0**
(3)  2/4/10: Attend trial: **8.0**

**Jennings (paralegal)**
(1)  3/9/10-4/14/10: Research, verify and document Cosby Billing records for attorney fee motion: **137.0**

                    **ii.  Dubious Fee Requests**

(1)  1/8/07: Research Regulations and Statutes Re Admin Exhaustion: **2.8**
(2)  3/6/08: Review court documents commencing removal and instructions for further proceedings in federal court: **3.4**
(3)  7/28/08: Review Status Order: **3.9**
(4)  4/7/09: Review seven notices of deposition: **0.7**
(5)  5/7/09: Prepare draft mid litigation statement (only law and motion matter concerned whether a defendant should be dismissed as "fraudulent"): **0.7**
(6)  6/29/09: Review M. Nelson, M.D. Exhibits: **4.4**
(7)  8/17/09: Review Deposition of Bonnie Shaw in preparation for pretrial statement: **3.8**
(8)  8/18/09: Review Deposition of Rick Smith in preparation for pretrial statement: **5.2**
(9)  8/19/09: Review Deposition of Kathy Pope in preparation for pretrial statement: **1.4**
(10) 8/19/09: Review Deposition of Dr. Marcia Nelson in preparation for pretrial statement: **1.1**

---

[3] At oral argument, plaintiff's counsel expressed that many of these entries represent the correct number of hours, yet were sloppy records. For example, when he wrote "Attend final pretrial conference," he included billing for hours preparing for the conference. The court cannot correct for the sloppiness of plaintiff's counsel. Counsel testified under penalty of perjury only that they engaged in certain conduct. It is not appropriate for the court to infer preparation and other activity based on the representations of plaintiff's counsel at oral argument.

(11) 8/19/09: Review Deposition of Nicole McCollum in preparation for pretrial statement: **4.2**
(12) 8/20/09: Review Deposition of Sheri Lemond in preparation for pretrial statement: **3.4**
(13) 8/21/09: Review Deposition of Steve Bender in preparation for pretrial statement: **1.2**
(14) 9/11/09: Review sample pretrial statements from other federal cases pulled from PACER: **6.4**
(15) 9/21/09-9/28/09: Prepare case summary: **19.4**
(16) 11/13/09: Review Nazir v. United Airlines - For Opposition to Defendant Reply: **5.6**
(17) 1/22/10: Billed **19.1** hours in one day.

### iii. Travel Time

(1)  5/25/09: Travel to Albuquerque, NM for McCollum Depo: **9.0**
(2)  6/29/09: Travel to Ontario for Deposition of Rick Smith: **4.0**
(3)  6/29/09: Travel time from Ontario: **4.0**

The travel billing rates were not reduced by 50%. Rather, plaintiff billed for travel at their full lodestar.

### iv. Conclusion

As an initial matter, the court reduces the lodestar for travel time by 50%.

Further, in light of the problems identified above, the court intends to reduce the lodestar of all attorneys and paralegals by 10%. The court finds that doing so is appropriate in light of the problems it identifies above. This reduction is in addition to any specific reductions discussed in this order.

### 3.   Paralegal Hours

Defendant argues that the hours billed by plaintiff's paralegals should not be recovered because they performed administrative functions for plaintiff's office. Defendant also argues that they should not be recovered because only one of the

three paralegals is specifically trained as a paralegal. These arguments are without merit. Plaintiff's paralegals performed functions specific to this case, such as interviewing witnesses and attending trial. These fees are recoverable. Additionally, the rate of $100 per hour for paralegal time is a reasonable rate in Sacramento.

### 4.   Expert Costs

Defendant argues that plaintiff should not recover costs from its expert, Dr. Mahla, because his testimony concerned plaintiff's past and future economic losses resulting from his termination. The jury found against plaintiff on grounds that his termination was unlawful. Plaintiff does not provide any substantive response to this argument. Plaintiff is only entitled to recover fees and costs relating to claims upon which it prevailed. Again, the parties do not provide sufficient information upon which the court can decide whether these costs should be awarded to plaintiff. Plaintiff is thereby ordered to file a statement within twenty-one (21) days of the issuance of this order explaining why Dr. Mahla's expert report and/or testimony were related to the claims upon which judgment was entered in his favor. Defendant may file a response to this statement within fourteen (14) days of service of plaintiff's statement.

### D.   Multipliers

Plaintiff seeks a multiplier of 2 of the lodestar rates for attorneys' fees incurred prior to trial. Plaintiff contends that

1  he is entitled to an increase in attorneys' fees because of "the

2  contingent nature of the fee award, the novelty and difficulty

3  of the issues presented, and the quality of representation."

4  Application at 8. The court is not persuaded. "[T]he trial court

5  is not required to include a fee enhancement to the basic

6  lodestar figure for contingent risk, exceptional skill, or other

7  factors. . . . In each case, the trial court should . . .

8  consider the degree to which the relevant market compensates for

9  contingency risk, extraordinary skill, or other factors under

10 Serrano [v. Priest]. . . . [W]hen determining the appropriate

11 enhancement, a trial court should not consider these factors to

12 the extent they are already encompassed within the lodestar."

13 Ketchum, 24 Cal. 4th at 1138.

14      As for the contingency risk, the court finds that the

15 hourly rate that counsel will be awarded is "higher than a fee

16 for the same legal services paid as . . . performed" in light of

17 the apparent padding and, thus, the risk is encompassed within

18 the original lodestar and a fee enhancement would be

19 inappropriate. See Ketchum, 24 Cal. 4th at 1132. As to

20 difficulty and novelty, there is no novelty in this case -

21 plaintiff did not change the law or expand the coverage of FEHA

22 or bring a sort of case that has never been brought before.

23 Further, prevailing parties are not entitled to a multiplier

24 merely because they were busy during trial - such is the norm.

25 Lastly, while plaintiff's counsel achieved a great result for

26 their client, the quality of representation does not warrant

enhancement of the lodestar in this case. Plaintiff's counsel
did not demonstrate exceptional skills "beyond those that might
be expected of attorneys of comparable expertise or experience."
Weeks v. Baker & McKenzie, 63 Cal. App. 4th 1128, 1176 (1998);
see also Ketchum, 24 Cal. 4th at 1139 ("[A] trial court should
award a multiplier for exceptional representation only when the
quality of representation far exceeds the quality of
representation that would have been provided by an attorney of
comparable skill . . . ."). Plaintiff has not shown that the
results obtained justify a fee enhancement. This is especially
so when it appears to the court highly likely that plaintiff has
padded his fee petition.

Defendant moves to decrease the fees sought by plaintiff by
50% because plaintiff lost on two of his claims. Defendant
contends that these claims were the ones that required the most
work. However, the only specific item that defendant challenges
as not appropriate on this ground is the expert report discussed
above. The court cannot determine which efforts plaintiff
exhausted in pursuing the unsuccessful claims. In fact, it
appears to the court that the unsuccessful claims are strongly
related to the successful ones. Because defendant cannot refer
the court to any specific entries that are problematic because
they only concern unsuccessful claims, the court declines to
reduce the amount of fees sought by plaintiff on this ground.

**IV. CONCLUSION**

For the foregoing reasons, the court ORDERS that plaintiff

15

1  SHALL FILE a statement within twenty-one (21) days of the

2  issuance of this order explaining why Dr. Mahla's expert report

3  and/or testimony were related to the claims upon which judgment

4  was entered in his favor. Defendant may file a response to this

5  statement within fourteen (14) days of service of plaintiff's

6  statement. Upon receipt of these briefs, the court will

7  calculate plaintiff's fee award.

8       The court intends to stay the fee award in this case

9  pending resolution of defendant's appeal. The parties may

10  indicate any objections to the court doing so along with their

11  briefing on the expert question.

12       IT IS SO ORDERED.

13       DATED:  December 15, 2010.

14

15

16                         LAWRENCE K. KARLTON
                           SENIOR JUDGE
17                         UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25

26