```
                    UNITED STATES DISTRICT COURT

                  FOR THE EASTERN DISTRICT OF CALIFORNIA


RANDY COSBY,
                                        NO. CIV. S-08-505 LKK/DAD
          Plaintiff,

     v.
                                             O R D E R
AUTOZONE, INC., JIM KULBACKI
and DOES 1-100, inclusive,

          Defendants.
                                    /
```

Plaintiff Randy Cosby brought this diversity action against Defendant Autozone, Inc. under California's Fair Employment and Housing Act. The jury found AutoZone liable to Mr. Cosby for failure to provide reasonable accommodation and failure to engage in the interactive process. Based on that liability, the jury awarded Mr. Cosby $174,000 for lost wages and benefits; $1,326,000 for past mental suffering; and denied punitive damages. After trial, AutoZone filed a motion for a new trial or remittitur, which this court denied. On appeal, the Ninth Circuit reversed this

court's decision and remanded the case for this court to order remittitur with the option of a new trial on damages.

Now before the court are Plaintiff's and Defendant's briefs regarding remittitur or a new trial on damages. See Pl's Br., ECF No. 168; Def's Br., ECF No. 169.

## ANALYSIS

On appeal, the Ninth Circuit directed this court as follows:

> We remand the issue of both economic and non-economic damages to the district court for remittitur with the option of a new trial on damages. The district court should set the amount of remittitur. The amount for remittitur on economic damages is not to exceed $4,917.60, the amount specifically requested by Mr. Cosby at trial. In setting the amount of remittitur for non-economic damages, the district court must outline specifically, with reference to the evidence presented at trial, the reasons for the amount.

Cosby v. AutoZone, Inc., 2011 WL 3267704, *2 (9th Cir. Aug. 1, 2011).

**A. Economic Damages**

As the Ninth Circuit noted, "AutoZone's failure to accommodate and to engage in the interactive process resulted in Mr. Cosby's being forced to take unpaid medical leave. Mr. Cosby's damages expert testified that the economic loss from the forced medical leave was $4,917.60, and Mr. Cosby's counsel, in closing arguments, asked specifically for this amount." Id. at *1.

Thus, in accordance with the Ninth Circuit's order, the testimony from Mr. Cosby's damages expert, and Mr. Cosby's

2

counsel's request at closing arguments, the court sets the amount of remittitur on economic damages at $4,917.60.

**B. Non-Economic Damages**

Under California law, "to recover damages for emotional distress[,] the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory." Young v. Bank of America, 141 Cal. App. 3d 108, 190 Cal. Rptr. 122, 126 (1983). Examples of emotional distress include "highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." Id. (quotation marks omitted).

In determining that the jury's non-economic damage award of $1,326,000 was not supported by the evidence in this case, the Ninth Circuit held that:

> Even by Mr. Cosby's own description, he testified that, after his medical leave, he came back to AutoZone without any restrictions and that his supervisor, Jim Kulbacki, made supportive comments. Mr. Cosby described himself as being only slightly upset at being forced to take medical leave. It is also not clear how the sexual harassment investigation was caused by, or how the course of its proceedings was affected by, AutoZone's failure to accommodate or to engage in the interactive process. Indeed, Mr. Cosby's name was cleared in the investigation. Even if the jury found that AutoZone's failure reasonably to accommodate contributed to his later termination, the evidence is insufficient to support the non-economic award. Mr. Cosby testified extensively regarding mental suffering on the day of his termination. After his termination, however, Mr. Cosby eventually found satisfactory employment, and there is no evidence of any enduring mental suffering.

Cosby v. AutoZone, Inc., 2011 WL 3267704, at *2 (9th Cir. Aug.

1, 2011).

Whether the Ninth Circuit's findings are fully supported by the record in this case is beside the point. It is a holding by which this court is bound.

The court, nonetheless, draws attention to Mr. Cosby's testimony regarding his emotional reactions upon notifying his supervisor that he would be unable to drive because of his sleep apnea; specifically, Mr. Cosby's supervisor "pretty much shut [Mr. Cosby] down," "wasn't very cooperative," and "[d]idn't want to come up with any kind of accommodation," which caused Mr. Cosby to "just g[i]ve up." Tr., ECF No. 98, at 42.

The court also draws particular attention to Mr. Cosby's testimony regarding the non-economic injuries he suffered resulting from his eventual termination, following his years of service to AutoZone. Mr. Cosby testified that he felt "shell-shocked"; that he "[d]idn't know what to say"; and that it was the "worst day of [his] life." Id. at 113. Because the supervisor did not allow Mr. Cosby to drive the company car home (even though other terminated district managers had been allowed to do so), Mr. Cosby was required to travel home via cab, in response to which, Mr. Cosby testified that he "ha[d] to sit there . . . and tell [a] complete stranger [that he] just got fired[, which] was very degrading . . . embarrassing." Id. at 114. Mr. Cosby testified that his "whole life flashed in front of [his] eyes"; he "felt that [he]'d have been better off if they shot [him]"; and he "felt like [he] was in a sea of hopelessness . . . it was just a continuing agony from

4

1  that day forward." Id. at 114-15.  Mr. Cosby testified that it was
2  "very hard" to tell his parents and his wife that he had lost his
3  job.  Id. at 113.  Mr. Cosby further testified that when his son,
4  Jason, returned home from serving in the military in Iraq, because
5  Mr. Cosby had been terminated from AutoZone, Mr. Cosby and his wife
6  had to tell Jason that they "couldn't afford to go see him." Id.
7  at 116.  In regards to Mr. Cosby's conversation with his two
8  daughters regarding his termination, Mr. Cosby stated, "it is just
9  awful telling them that you no longer are employed with a company
10 you've been employed with for so many years, hoping to have a
11 career, a retirement with.  It was just – it's just devastating."
12 Id. at 117.

13    Finally, the court notes the non-economic injuries exhibited
14 by Mr. Cosby's response to the question, "When you think about the
15 future, what comes to mind?".  Id. at 118.  Mr. Cosby replied:

> I know the future will never be the same as what
> it would have been. . . . You know, it is hard
> to accept.  You know, people always say, well,
> life goes on.  They've probably never been
> terminated from a position like mine.  You know,
> sometimes life goes on, but it will never go on
> like it could have gone on.

20 Id. at 118-19.

21    Defendant AutoZone argues that the Ninth Circuit concluded
22 that there was an insufficient causal link between AutoZone's
23 failure to provide reasonable accommodation and its failure to
24 engage in the interactive process and the damages resulting from
25 Mr. Cosby's subsequent termination and, therefore, Mr. Cosby's
26 emotional distress damages should not be based upon his

1  termination.  See, e.g., Defs' Br., ECF No. 169, at 9.  However,
2  the Ninth Circuit made no such finding.  To the contrary, the Ninth
3  Circuit provided, "Even if the jury found that AutoZone's failure
4  reasonably to accommodate contributed to his later termination, the
5  evidence is insufficient to support the non-economic award."  Cosby
6  v. AutoZone, Inc., 2011 WL 3267704, at *2 (9th Cir. Aug. 1, 2011).
7  The conditional structure of this sentence necessarily considers,
8  as opposed to invalidates, any causal link the jury drew between
9  AutoZone's failure to accommodate and Mr. Cosby's subsequent
10 termination.  The court therefore considers it proper to take into
11 account Mr. Cosby's testimony as to his emotional state following
12 his termination in the remittitur on non-economic damages.

13      The Ninth Circuit has noted in a footnote that no "definite
14 standard or method of calculation is prescribed by law by which to
15 fix reasonable compensation for pain and suffering."  See Hilao v.
16 Estate of Marcos, 103 F.3d 789, 793 n. 3 (9th Cir. 1996).  However,
17 the Ninth Circuit has also provided that the proper amount of a
18 remittitur is the maximum amount of damages that can be sustained
19 by the evidence in the record.  D & S Redi-Mix v. Sierra Redi-Mix
20 & Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).  This rule
21 prevents the court's substitution of its judgment for that of the
22 jury.  Id.  Thus, taking into account the evidence in the record
23 referred to by the Ninth Circuit, and giving particular weight to
24 the testimony of Mr. Cosby cited above, the court determines that
25 remittitur on non-economic damages is appropriately set at
26

$250,000.00.[1]  In light of the court's remittitur of the non-economic damage award from $1,326,000 to $250,000, Plaintiff is entitled to a new trial if he does not accept the damage award as remitted.  See Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir. 1983).

**C. Punitive Damages**

Plaintiff requests additur to the punitive damage award, "[t]o the extent that this court's remittitur falls below $1,000,000. . . so that AutoZone's total damages liability meets or exceeds [] $1,000,000."  Pl's Br., ECF No. 168, at 17.  Plaintiff's request is denied.

It appears to the court, however, that based on the evidence before the court, the jury blurred the lines between punitive and compensatory damages in making its damage awards.  If Plaintiff rejects remittitur and instead seeks a new trial, as the Ninth Circuit has provided, the new trial will address the issue of damages.  Cosby v. AutoZone, Inc., 2011 WL 3267704, *2 (9th Cir. Aug. 1, 2011).  That is, the new trial will address Plaintiff's economic, non-economic, and punitive damage awards.  See Minthorne v. Seeburg Corp., 397 F.2d 237, 244 (9th Cir. 1968) ("[O]n the question of damages, this Circuit has held that the trial judge . . . may 'grant a new trial when he is of the opinion the verdict is against the weight of evidence.'") (internal citations omitted).  Accordingly, the court ORDERS as follows:

---

[1] The court is in the unenviable position of second guessing the jury.

7

[1] The court REMITS the economic damage award for Plaintiff from $174,000 to $4,917.60.

[2] The court REMITS the non-economic damage award for Plaintiff from $1,326,000 to $250,000.00.

[3] Plaintiff's request for additur to the punitive damage award is DENIED.

[4] Within twenty-one (21) days of the filing of this order, Plaintiff SHALL inform the court in writing of whether he (1) consents to the remitted damages award; (2) seeks a new trial; or (3) plans to appeal the remittitur.

IT IS SO ORDERED.

DATED:   January 10, 2012.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT