UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY COSBY,<br><br>                    Plaintiff,<br><br>          v.<br><br>AUTOZONE, INC., JAMES KULBACKI,<br>and DOES 1-100, inclusive,<br><br>                    Defendants. | No.  2:08-cv-00505-KJM-DAD<br><br><br>ORDER |

I.       INTRODUCTION

        Plaintiff Randy Cosby brought this action under the California Fair Employment and Housing Act (FEHA).  Compl., ECF No. 1.  Judgment was entered on February 24, 2010 after a jury trial, and Cosby was awarded $1.5 million in damages.  Jury Verdict, ECF No. 88.  Thereafter, defendant Autozone filed three appeals, each regarding the issue of Cosby's damages.  ECF Nos. 119, 176, 204.

        Cosby now seeks attorneys' fees for time expended in preparation for trial, time during trial, as well as time expended in defending against Autozone's appeals, in two separate applications.  Appl. #1, ECF No. 107; Appl. #2, ECF No. 222.  The matters were submitted without a hearing.  ECF No. 229.  As explained below, Application #1 is GRANTED IN PART

1    in accordance with the principles established in an order of the previously assigned district judge.

2    *See* Prior Order, ECF No. 143.  Application #2 also is GRANTED IN PART.

3    II.      BACKGROUND & PROCEDURAL HISTORY

4                Randy Cosby, a former employee of Autozone, Inc., sued his former employers

5    asserting claims for violations of the FEHA.  Not. Remov., ECF No. 1.  On January 26, 2010, a

6    jury trial commenced to address five claims: (1) disability discrimination; (2) failure to prevent

7    disability discrimination and retaliation; (3) failure to engage in the interactive process; (4) failure

8    to provide reasonable accommodations; and (5) retaliation.  Prior Order at 2.  On February 12,

9    2010, the jury reached verdicts on the claims.  *See* Jury Verdicts, ECF Nos. 81–86.  The jury

10   found for Cosby with respect to his claims of failure to engage in the interactive process and

11   failure to provide reasonable accommodations.  ECF Nos. 82, 83.  The jury found for Autozone

12   with respect to the claims of disability discrimination, failure to prevent disability discrimination

13   and retaliation, and retaliation.  ECF Nos. 84–86.

14                On February 24, 2010, the jury awarded Cosby $174,000 in economic losses and

15   $1,326,000 in damages for emotional and mental distress, totaling $1.5 million in compensatory

16   damages.  Jury Verdict, ECF No. 88.  On March 17, 2010, Autozone moved for a new trial or

17   remittitur, claiming the damages award was excessive.  ECF No. 97.  On April 19, 2010, the court

18   denied this motion.  ECF No. 106.  In response, Autozone filed its first of three appeals,

19   challenging the court's entry of judgment on damages.  ECF No. 119.

20                While the first appeal was pending, Cosby filed his first application with this court

21   for attorneys' fees and costs.  Appl. #1.  This application covered hours incurred from the date he

22   says investigation began on September 25, 2006, well before trial, to April 21, 2010, when the

23   first application was submitted.  *See id.*; *see also* Bohm Decl., ECF No. 110-1.

24                On December 16, 2010, while the first appeal was still pending, the court issued an

25   order deciding, *inter alia,* that Cosby was the prevailing party in the jury trial, and in the court's

26   discretion, he would be awarded attorneys' fees.  Prior Order at 6.  The court also set billing rates

27   for Joseph Earley, Charles Moore and Lawrence Bohm at $375 an hour.  *Id.* at 6.  The court

28   concluded several deductions were warranted, including deductions for hours Earley billed to

2

attend a deposition in Albuquerque, New Mexico, because the court reasoned it was unnecessary for two counsel to attend the deposition. *Id.* at 7. The court also declined to compensate in full or in part for several time entries. *Id.* at 8, 12. For example, it reduced the amount billed for travel time by fifty percent and reduced Earley's lodestar to $100 per hour for 16.5 hours spent accompanying a witness to Northern California so he could testify at trial. *Id.* at 8, 12. In the court's judgment, a paralegal was just as capable of performing this task. *Id*. at 8.

The court also identified and declined to compensate for several inflated fee requests, including requests connected to "time entries for events at the court where the court knows that plaintiff has over-billed and several entries which appear to the court to be unreasonable." *Id.* at 9. For the same reason, the court identified and declined to compensate for several "dubious fee requests." *Id.* As a result of apparent "padding," the court reduced the lodestar for all attorneys by ten percent across the board. *Id.* at 12. It also declined to apply a multiplier. *Id.* The court later issued a supplemental decision on February 28, 2011, ordering Autozone to pay for fees associated with expert testimony on economic losses. ECF No. 147 at 5. The court stayed the award of fees based on Application #1 pending resolution of defendant's appeal. *Id*.

On August 1, 2011, the Ninth Circuit issued a memorandum decision granting Autozone's first appeal, reversing based on the district court's error in allowing an award of both economic and non-economic damages. ECF Nos. 149, 150 at 5–6. The Circuit remanded with an order to remit economic and non-economic damages. ECF No. 149. Accordingly, the district court reduced economic damages from $174,000 to $4,917.60, and non-economic damages from $1,326,000 to $250,000. ECF No. 172 at 3, 7. The court gave Cosby the option of a new trial if he did not accept the damages award as remitted, with a new trial addressing only economic and non-economic damages, as well as punitive damages. *Id.*

Autozone then filed its second appeal, challenging the district court's decision to allow consideration of punitive damages if Cosby chose a new trial. ECF No. 176 at 1–2. Cosby accepted remittitur, $250,000 in non-economic and $4,917.60 in economic damages were awarded, and Autozone's appeal was mooted. ECF Nos. 199, 200.

1    Autozone then appealed for a third time, challenging the amount of non-economic

2    damages awarded.  ECF No. 204.  On March 18, 2015, the Ninth Circuit affirmed the district

3    court's reduced award of non-economic damages.  ECF No. 213.

4    On June 2, 2015, Cosby renewed his first application for attorneys' fees, which

5    was stayed pending appeals.  Appl. #2, ECF No. 222.   That same day, Cosby also submitted a

6    second application to this court for the balance of his attorneys' fees and costs.  *Id.*  Application

7    #2 covers hours incurred from May 10, 2010, shortly after the jury verdict and Cosby's first

8    application for attorneys' fees, through Autozone's three appeals, and to June 2, 2015.  Bohm

9    Decl. Exs., ECF No. 222-3.  On July 10, 2015, Autozone filed an opposition to Cosby's motion,

10   Defs.' Opp'n, ECF No. 224, to which Cosby has replied, Reply, ECF No. 227.

11   III.    LEGAL STANDARD

12   Attorney's fees in FEHA actions are governed by statute, which provides that a

13   court, "in its discretion, may award to the prevailing party reasonable attorney's fees and costs."

14   Cal. Gov't Code § 12965(b); *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 609 (9th Cir. 2000)

15   (interpreting the FEHA).  Unless special circumstances would render a fee award unjust, the court

16   should ordinarily award attorneys' fees to a prevailing FEHA plaintiff.  *Steele v. Jensen*

17   *Instrument Co.*, 59 Cal. App. 4th 326, 330 (1997).

18   After the court decides to award attorneys' fees to the prevailing party, it

19   determines the award amount.  *See Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478

20   (9th Cir. 1995) (interpreting the FEHA).  Courts in the Ninth Circuit apply state law in

21   determining the right to fees in addition to the method of calculating fees.  *Id.*  In California, the

22   court determines the award amount through the "lodestar adjustment method."  *Ketchum v.*

23   *Moses*, 24 Cal. 4th 1122, 1132 (2001).  The lodestar adjustment method requires the court to

24   determine a "touchstone" figure based on the number of hours reasonably expended, multiplied

25   by the reasonable hourly rate.  *Id.* at 1132.

26   After determining the lodestar amount, the court can determine whether it will

27   apply a multiplier.  A multiplier may be used to adjust the lodestar based on several factors,

28   including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in

4

1   presenting them, (3) the extent to which the nature of the litigation precluded other employment

2   by the attorneys, [and] (4) the contingent nature of the fee award." *Nichols v. City of Taft*,

3   155 Cal. App. 4th 1233, 1240 (2007). The "court is not required to include a fee enhancement to

4   the basic lodestar figure for contingency cases, exceptional skills, or other factors, although it

5   retains discretion to do so in the appropriate case." *Id.*

6   IV.    DISCUSSION

7          As noted, Cosby filed two applications for attorneys' fees. Appl. #1, Appl. #2.

8   The first application remains pending as renewed following conclusion of appeal. The court

9   addresses each application in turn.

10         A.    Fee Application #1

11         Application #1 covers attorney hours billed from September 25, 2006 to April 21,

12  2010. ECF No. 110.

13         As noted, the previously-assigned district judge addressed this application for

14  attorneys' fees in two orders. *See* Prior Order; *see also* ECF No. 147. In general, "judges who sit

15  [on the same case] should not attempt to overrule the decisions of each other." *Castner v. First*

16  *Nat'l Bank of Anchorage*, 278 F.2d 376, 379 (9th Cir. 1960) (citation and quotation marks

17  omitted). "[J]udges must, in light of the overarching 'principles of comity and uniformity,' make

18  every effort 'to preserve the orderly functioning of the judicial process' when reconsidering an

19  order of a prior judge in the same case." *Baldwin v. United States*, 823 F. Supp. 2d 1087, 1099

20  (D. N. Mar. 1, 2011) (quoting *Castner*, 278 F.2d at 379–80). While a second judge has discretion

21  to review the decision of a predecessor in the same case, the law of the case doctrine can limit

22  that discretion. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir. 2001)

23  (quoting *Jeffries v. Wood*, 114 F.3d at 1484, 1489 (9th Cir. 1997)). Indeed, "the prior decision

24  should be followed unless (1) the decision is clearly erroneous and its enforcement would work a

25  manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or

26  (3) substantially different evidence was adduced at a subsequent trial." *Id.*

27         Neither Cosby nor Autozone contend the prior judge committed clear error in his

28  orders addressing Application #1. Indeed, in his reply to Autozone's opposition to his second

5

1 application for attorneys' fees, Cosby has recalculated the award following Application #1 based

2 on the principles reflected in the prior judge's December 2011 order. *See* Reply at 6.

3       In the absence of evidence indicating the prior decision was erroneous, that

4 circumstances have changed, or that manifest injustice will otherwise result, this court will not

5 disturb the decision. *See United States v. Alexander*, 106 F.3d 874, 878 (9th Cir. 1997). To

6 review, that decision (1) determined Cosby was the prevailing party; (2) determined attorneys'

7 fees were warranted; (3) ordered Autozone to pay for fees incurred for expert testimony on

8 economic losses; (4) set billable rates for Joseph Earley, Charles Moore, and Lawrence A. Bohm

9 at $375 per hour; (5) deducted hours Earley billed to attend a deposition in Albuquerque, New

10 Mexico; (6) reduced Earley's lodestar to $100 per hour for 16.5 hours spent accompanying a

11 witness to Northern California; (7) identified several inflated fee requests, including requests for

12 "time entries for events at the court where the court knows that plaintiff has over-billed and

13 several entries which appear to the court to be unreasonable"; (8) identified several "dubious" fee

14 requests, which the court also thought to be unreasonable; (9) reduced travel time by fifty percent;

15 (10) reduced the lodestar by ten percent for all attorneys across the board for dubious and

16 unreasonable fee requests; and (11) declined to apply a multiplier. *See generally* Prior Order; *see*

17 *also* ECF No. 147 at 5.

18       While the court identified the means by which to calculate the award amount, it

19 did not ultimately calculate a total award amount. *See* Prior Order at 16. Accordingly, this court

20 will apply the Prior Order's provisions to determine the total fees and costs to be awarded based

21 on Application #1.

22       B.    Fee Application #2

23          1.    Prevailing Party

24       Cosby contends he continues to be the prevailing party following resolution of all

25 appeals, because he obtained a "net monetary recovery." ECF No. 222 at 4. Although Autozone

26 contends Cosby had "limited success" on appeal, it does not contest Cosby's argument that he is

27 the prevailing party. *See* Defs.' Opp'n at 19. For purposes of evaluating the second application,

28 the court concludes Cosby is the prevailing party.

2.      Lodestar

The first step in determining the amount of reasonable attorneys' fees is to multiply the number of hours reasonably expended in the litigation by a reasonable hourly rate, *i.e.*, by calculating the "lodestar" fee. *EnPalm, LLC v. Teitler Family Trust*, 162 Cal. App. 4th 770, 774 (2008). The lodestar rate reflects the "basic fee for comparable legal services in the community." *Ketchum*, 24 Cal. 4th at 1132.

To determine the lodestar, the court determines: (1) whether the number of hours Cosby's counsel expended is reasonable; (2) whether the hourly rate is reasonable; and (3) whether a multiplier should be applied to the final calculation of the fee award. Each issue will be addressed in turn below.

a)      Reasonable Hours

Counsel can receive compensation for those hours "reasonably spent" to "litigate the action to a successful conclusion." *Horsford v. Board of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005). Reasonably expended hours include "those [hours] necessary to establish and defend the [attorneys'] fee claim." *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982). They do not, however, include time spent "in the form of inefficient or duplicative efforts." *Horsford*, 132 Cal. App. 4th at 394. Such time "is not subject to compensation." *Id.*

Considering the "matter of reasonableness of attorney fees is within the sound discretion of the [] judge," this court can draw upon its own wisdom and experience to determine the reasonableness of various time entries Cosby has submitted to the court. *See Stokus v. Marsh,* 217 Cal. App. 3d 647, 656 (1990). This court has concerns regarding some of the time entries relied on in Application #2, reviewed below.

(1)      Ninth Circuit Boot Camp

In April 2011, Charles E. Moore, one of Cosby's attorneys, attended a "9th Circuit Boot Camp," an "annual" event providing "a beginning and intermediate guide to 9th Circuit Practice." Bohm Decl. Ex. A.

In his declaration, however, Moore states he is an "experienced appellate attorney having briefed and successfully argued numerous cases," which he identifies by name. Moore

7

Decl. ¶ 12, ECF No. 222-4.  Moore also explains he gained extensive knowledge of Autozone

based on his experience in resolving two trials and two appeals in other cases against Autozone.

*Id.*  On this record, it would be unreasonable to charge Autozone for a trip to a conference that, in

light of Moore's experience, was not "reasonably spent" to "litigate the action to a successful

conclusion."  *Horsford*, 132 Cal. App. 4th at 394.

The court declines to award attorneys' fees for sixteen hours expended to attend

the Ninth Circuit Boot Camp.

(2)     Other Hours

Other time entries in Cosby's application also cause the court concern in light of

the relatively limited and straightforward questions raised on appeal.  The main issues before the

appellate court included (1) whether the jury's damages verdict was excessive, *see* ECF No. 119;

(2) whether punitive damages should be considered if Cosby chose retrial instead of remittitur,

*see* ECF No. 176; and (3) whether Cosby's economic damages award was excessive, *see* ECF

No. 204.

"[T]rial courts must carefully review attorney documentation of hours expended;

'padding' in the form of inefficient or duplicative efforts is not subject to compensation."

*Ketchum*, 24 Cal. 4th at 1132.  A court may "reduce the award or deny one altogether" if the fee

request "appears unreasonably inflated."  *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 990

(2010) (quoting *Serrano*, 32 Cal. 3d at 635).

The court finds a number of time entries reflect block billing on which the court

frowns.  In these entries, counsel has assigned one-time charges to multiple discrete tasks.  *See*

*Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1010 (2013) ("Trial courts retain

discretion to penalize block billing when the practice prevents them from discerning which tasks

are compensable and which are not.").  The court finds the following specific entries

unreasonable on this ground:

1.  Lawrence A. Bohm

a.  07/12/2010: Review highlighted trial transcripts and prepare

annotated summary Vol. 1, 2 & 3: **7.7**

b.  07/12/2010: Review highlighted trial transcripts and prepare
annotated summary Vol. 4 & 5: **8.0**

c.  08/01/2010: Review highlighted trial transcripts and prepare
annotated summary Vol. 10, 11 & 12: **10.8**

d.  09/02/2010: Research & Review highlighted authorities cited by
AutoZone opening brief: **8.7**

e.  09/09/2010: Work on statement of facts for responding brief: **7.6**

f.  10/28/2010: Work on responding brief: **7.8**

g.  11/2/2010: Work on responding brief: **6.6**

h.  11/5/2010: Work on responding brief: **5.9**

i.  11/07/2010: Work on responding brief: **11.1**

j.  11/11/2010: Final review and edit of responding brief: **13.6**

k.  06/07/2011: Prepare for appellate oral argument: **6.5**

l.  06/11/2011: Prepare for appellate oral argument: **6.4**

m. 06/14/2011: Final preparation for oral argument: **11.2**

n.  04/21/2013: Review and  revise responding brief: **11.9**

o.  02/03/2015: Prepare for oral argument: **6.9**

p.  02/08/2015: Prepare for oral argument: **11.7**

2.  Charles E. Moore

a.  04/09/2013: Research legal authorities for brief: **14.2**

This list in fact is an example of time entries the court finds excessive or
unreasonable in light of the questions considered during the appeals.  Several other time entries
include unexplained block billing.  *See* Bohm Decl. Ex. A at 15 ("Continue Research Legal
Authorities for Brief" is listed for eleven consecutive days without further explanation, averaging
9.5 hours a day); s*ee also id.* at 22–23 ("Research, [v]erify document records for attorney fee
motion" is listed forty-four times consecutively, without further explanation, averaging 4.9 hours
a day).  In light of the myriad concerns identified above, in addition to those entries the court has
not identified with particularity, the court intends to reduce the lodestar for all attorneys and

9

paralegals by ten percent, which is modest considering the number of entries the court finds excessive or unreasonable.  *See California Common Cause v. Duffy*, 200 Cal. App. 3d 730, 752–54 (1987) (reducing award by fifty percent based on duplication of effort, requests for compensation for time spent on media relations, and unnecessary adversarial "skirmishes").  The calculation below will reflect this deduction.

(3)    Travel Time

The court also considers the travel time of counsel and reduces it by fifty percent, applying a principle established by the prior court's order.  *See* Prior Order at 12; *but see Gauchat-Hargis v. Forest River, Inc.*, No. 11-02737, 2013 WL 4828594, at *8 (E.D. Cal. Sept. 9, 2013) (state attorneys are generally compensated at their full hourly rate).  The applicable time entries prior to reduction are as follows:

a.   Lawrence A. Bohm

    i.   06/15/2011: Travel to and from Ninth Circuit and appear for appellate oral argument: **6.0**

    ii.   02/09/2015: Travel to and from Ninth Circuit and attend oral argument: **6.3**

**Total Hours: 12.3**

b.   Charles E. Moore

    i.   06/15/2011: Travel to and from San Francisco to Attend Oral Argument: **8.0**

    ii.   11/16/2011: Travel to and from San Francisco from San Diego to attend the Court Ordered Settlement Conference: **8.0**

    **iii.   12/18/2011:** Travel to and from San Francisco from San Diego to Attend Oral Argument: **8.0**

    iv.   06/18/2012: Travel to and From Sacramento from San Diego to attend the Court Ordered Mediation: **8.0**

**Total Hours: 32.0**

1               c.   Bianca N. Saad

2                       i.   02/09/2015: Travel to and from Ninth Circuit and Attend

3                          Oral argument: **6.3**

4                   **Total Hours: 6.3**

5           b)      <u>Reasonable Fee</u>

6            Once the number of reasonable hours is set, "the district court must determine a

7 reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting

8 fees." *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1124 (E.D. Cal. 2011) (interpreting the

9 FEHA).

10            As a preliminary matter, the court determines whether the rates articulated in the

11 prior court's order apply to Application #2.  While the law of the case limits the court's discretion

12 to deviate from prior rulings, fee determinations are necessarily related to the time frame in which

13 fees are incurred.  Governing case law encourages the court, when determining attorneys' fees, to

14 consider protracted proceedings as well as fair market value of services rendered.  *See City of*

15 *Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 83 (1988) (applying an enhancement on

16 grounds of delay).  The prior court order issued in 2010, and after a series of appeals, Cosby

17 submitted Application #2 in 2015.  To make up for the protracted appellate proceedings, spanning

18 almost seven years, the court will consider updated market rates for services rendered in

19 Application #2.

20            To determine the market rates, the court need not reference rates actually charged

21 by the prevailing party.  *Jadwin*, 767 F. Supp. 2d at 1130.  Instead, courts look to the "prevailing"

22 or "basic fee for comparable legal services in the community."  *Ketchum*, 24 Cal. 4th at 1132.

23 The "relevant legal community" for the lodestar calculation is generally the forum in which the

24 district court sits.  *Jadwin*, 767 F. Supp. 2d at 1124.  Another forum may provide the proper

25 relevant community, however, "if local counsel was unavailable, either because they are

26 unwilling or unable to perform because they lack the degree of experience, expertise, or

27 specialization required to handle properly the case."  *Id.*  The court may rely on rates outside the

28

1  local forum if the plaintiff establishes either unwillingness or inability; "[t]here is no requirement

2  that plaintiffs prove both."  *Id.*

3          Here the case was originally brought in Sacramento County Superior Court, was

4  removed to federal district court in Sacramento, and was litigated in Sacramento.  To the extent

5  post-trial proceedings took place in district court, that district court is located in Sacramento.

6  Appellate proceedings occurred before the Ninth Circuit in San Francisco, with Sacramento

7  attorneys appearing for argument.  Plaintiff's primary counsel worked out of an office in

8  Sacramento.  The relevant community for purposes of determining the reasonable fee is

9  Sacramento, California, as also was true for Application #1.  *See PLCM Grp. v. Drexler,* 22 Cal.

10  4th 1084, 1096 (2000) ([T]he prevailing market rate for comparable legal services is San

11  Francisco, where counsel is located.").  Accordingly, the court will apply the prevailing market

12  rate for a civil rights attorney practicing in the Sacramento area.  *Knox v. Chiang*, No. 05-02198,

13  2013 WL 2434606, at *7 (E.D. Cal. June 5, 2013).

14                        (1)      Charles E. Moore

15          Charles E. Moore requests the court grant his billing rate of $450 an hour.  Moore

16  Decl. ¶ 4, ECF No. 222-4.  Moore graduated from IIT-Chicago Kent College of Law in 1988 and

17  has been practicing since then.  *Id.* ¶ 5.  As relevant here, Moore practiced in the San Diego

18  market.  *See generally* Moore Decl.  His practice handles employment issues including "wrongful

19  termination, unfair competition, antitrust/trade secret, intellectual property rights, restrictive

20  covenant and representation of employers in administrative hearings."  *Id.* ¶ 6.  To support his

21  requested billing rate, Moore cites a San Diego Superior Court case, which he avers approved his

22  $450 per hour billing rate.  *See id.* ¶ 14.

23          Decisions from this district have found the hourly rate Moore requests to be

24  reasonable in the prevailing community for the time frame covered by Application #2.  *See Pehle*

25  *v. Dufour*, No. 06–1889,  2014 WL 546115, at *5–6 (E.D. Cal. Feb. 11, 2014) ($350 reasonable

26  hourly rate for labor attorney practicing since 1989); *Knox*, 2013 WL 2434606, at *7–9 (E.D. Cal.

27  June 5, 2013) ($450 reasonable hourly rate for attorneys with extensive trial and appellate

28  experience in labor and constitutional law); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

460 (E.D. Cal. 2013) ($400 prevailing hourly rate for counsel in wage-and-hour class action); *see also McCarthy v. Reynolds*, No. 09–2495, 2011 WL 4344147, at *2 (E.D. Cal. Sept. 14, 2011) ($285 reasonable hourly rate for counsel in employment action brought under Title VII and the FEHA); *Trulsson v. Cty. of San Joaquin Dist. Attorney's Office*, No. 11–02986, 2014 WL 5472787, at *6 (E.D. Cal. Oct. 28, 2014) ($450 reasonable hourly rate for labor attorney with 22 years' litigation experience).

The court concludes that Moore, a labor and employment attorney with twenty-seven years of experience can reasonably be awarded fees at a rate of $450 an hour.

(2)   Lawrence A. Bohm

Lawrence A. Bohm requests the court grant his billing rate of $350 per hour for time expended from May 10, 2010 to June 28, 2010; $400 per hour for July 12, 2010 to December 28, 2010; $500 per hour for January 3, 2011 to November 29, 2012; $600 per hour for January 18, 2013 to June 27, 2013; $700 per hour for December 1 to December 3, 2014; and $800 per hour for February 2, 2015 to June 1, 2015.  Bohm Decl. Ex. A, ECF No. 222-3.

Bohm graduated from Tulane University Law School in 2000 and has been practicing since then.  Bohm Decl. ¶ 5, ECF No. 222-2.  As with Moore, Bohm's practice consists of employment law.  *See id.* ¶¶ 6–7.  In his 15 years of practice, Bohm has acquired extensive trial experience from his participation in numerous civil trials from start to final disposition.  *Id.* ¶ 10.

Bohm avers his top hourly rate of $800 is reasonable because of his familiarity "with the market rates charged by attorneys in California for employment-related matters."  *Id.* ¶ 23.  He attests "the market rate awarded in employment-related cases is over $500/hour to $800/hour." *Id.*  Bohm bases his conclusion on his review of other court orders awarding fees, information posted on the *California Employment Lawyer's* website and list-serve, and documentation provided by Richard M. Pearl as author of the resource titled *California Attorney Fee Awards.  Id.*  Bohm also provides one example of a Sacramento state court case approving his hourly rate at $700.  *Id.* ¶ 4.  But upon review, the court concludes this decision was not final, but

1  tentative.  *See* Bohm Decl. Ex. A, ECF No. 222-3.  Bohm provides no final court ruling

2  supporting his $800 hourly rate.

3          Bohm also has submitted several declarations from colleagues in support of his

4  $800 hourly fee.  *See* Bohm Decl. Exs. E–M, ECF No. 222-3.  The court may properly consider

5  the declarations of other lawyers in determining what constitutes a reasonable hourly rate.

6  *Viveros v. Donahoe*, No. 10–08593, 2013 WL 1224848, at *4 (C.D. Cal. Mar. 27, 2013).[1]  Bohm

7  submits declarations from a total of nine lawyers: (1) Christopher Whelan; (2) Elisa Ungerman;

8  (3) Jill Telfer; (4) Phil Horowitz; (5) Daniel Wilcoxen; (6) Galen T. Shimoda; (7) James

9  Desimone; (8) Robert L. Boucher; and (9) Erik Roper.  *See* Bohm Decl. Exs. E–M, ECF No. 222-

10  3.  These lawyers have a range of experience from eight years to forty-two years.  *See id.*  With

11  the exception of two attorneys, they practice in Sacramento.  Phil Horowitz, who practices in the

12  Bay Area, charges $675 per hour, *id.* Ex. H, and James Desimone who practices in Southern

13  California, charges $750.00 an hour, *id.* Ex. K.  The only Sacramento attorneys who come close

14  to these rates are Christopher Whelan and Danial Wilcoxen, who say they charge $700 and $600

15  an hour, respectively.  The court notes Whelan and Wilcoxen have 38 years and 42 years of

16  experience, also respectively.  *See id.* Exs. E, I.

17          In sum, no other lawyer claims an hourly rate of more than $750.00 an hour, and

18  no Sacramento attorney claims a court sitting in Sacramento has awarded him or her more than

19  $650 an hour.  *See generally* Exs. E–M.  In the case where $650 an hour was granted, counsel had

20  34 years' experience.  *Id.* Ex. E.  Attorneys with comparable years of experience to Bohm have

21  charged $450 an hour, *see id.* G, J, L, M, and none of these attorneys claim a court has awarded

22  more than $450 an hour.  *See id.* Ex. G.

23          The court finds the record does not support Bohm's request for $800 an hour for

24  his time in 2015.  At the time Bohm filed his fee request, he had been practicing for

---

26  [1] *Viveros* interprets the attorneys' fee provisions in Title VII.  *See Viveros*, 2013 WL
27  1224848, at *1.  In interpreting the FEHA's attorneys' fee provisions, California courts have
   looked for guidance to federal decisions construing Title VII's fee provision.  *Chavez*, 47 Cal. 4th
28  at 985.

approximately fifteen years.  Bohm Decl. ¶¶ 5–20, ECF No. 222-2.  Comparing his years of

experience with those attorneys who have provided declarations, and considering persuasive

authority from this district, the court concludes $450 per hour is a reasonable hourly rate for

Bohm in 2015.  Recognizing that Bohm's 2010 hourly rates were lower than $450, and also that

payment of his fees has been delayed by post-trial litigation, the court will apply $450 as the

hourly rate for all of Bohm's work performed subject to Application #2.  *See City of Oakland*,

203 Cal. App. 3d at 83 (applying a fee enhancer for deferral of payment to counsel).

(3)      Bianca N. Saad

Bianca N. Saad requests the court grant her billing rates of $300 per hour for time

expended from October 12–14, 2011; $350 per hour for February 22, 2013 to April 24, 2013; and

$400 per hour for December 2, 2014 to May 22, 2015.  Bohm Decl. Ex. A.

Ms. Saad graduated from California Western School of Law in 2009.  Bohm Decl.

¶ 21(d).  She was admitted to the bar in 2010 and has been practicing since then.[2]  Her practice

consists mainly of employment and labor law.  *See id.* ¶¶ 21(a)–21(o).

Cosby provides no support for awarding Ms. Saad, an attorney with less than 6

years' experience, fees at a top rate of $400 an hour.  She does not have the extensive trial

experience Moore and Bohm do.  The court concludes Ms. Saad may be compensated at a rate of

$300.00 per hour.

(4)      Kelsey K. Ciarimboli

Kelsey K. Ciarimboli requests the court grant her billing rate of $350 per hour.

Bohm Decl. Ex. A.  Ciarimboli graduated from Tulane Law School in 2014.  Bohm. Decl.

¶ 22(a).  She has practiced law for a little over one year.  *See id.*  The record before the court does

not support compensation for Ciarimboli, a new attorney, at $350 an hour.  The court will

compensate Ciarimboli at a rate of $150 an hour.  *See Orr v. California Highway Patrol*, No. 14-

---

[2] In accordance with Rule 201, the court may take judicial notice of matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).  Accordingly, the court takes judicial notice of the information on the California State Bar website, which provides Ms. Saad's credentials.

585, 2015 WL 9305021, at *4 (E.D. Cal. Dec. 22, 2015) (market rate for second- and third-year associates between $150 and $170 per hour).

c)    <u>Multipliers</u>

The court also determines whether it will apply a multiplier. The lodestar may be adjusted by the court based on several factors, including (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. *Nichols*, 155 Cal. App. 4th at 1240. The court has no obligation to apply a multiplier when determining the fee award. *Id.*

Cosby does not discuss the second and third multiplier factors in his moving papers. He does request the court consider two additional factors: (1) results obtained, and (2) delay in payment. *See* Appl. #2 at 13–14. Autozone contends the court should apply a negative multiplier instead of a positive multiplier due to Cosby's "limited success" on appeal. Opp'n at 19.

(1)    Novelty/Difficulty

When determining the appropriate enhancement, a trial court should not consider the novelty and difficulty factors to the extent they are already encompassed within the lodestar. *Ketchum*, 24 Cal. 4th 1122, 1138. The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are naturally encompassed in the lodestar. *Id.* A more difficult legal question typically requires more attorney hours. *Id.*

For purposes of this application, the court will consider difficulty to the extent it involved litigating Autozone's appeals. As noted, the main legal questions raised on appeal were (1) whether the jury verdict was excessive; (2) whether punitive damages should be considered if Cosby chose retrial instead of remittitur; and (3) whether Cosby's economic damages award was excessive.

Cosby argues difficulty is supported by his counsel's "learning Autozone's complex corporate structure, along with obtaining documents to prove [the] case," Appl. #2 at 11,

16

1    but this knowledge was not necessary to defend against Autozone's appeals.  In addition, these

2    tasks are reflected in the time entries submitted to the court.

3                    No multiplier is warranted on grounds of difficulty or novelty.

4                            (2)    Contingent Nature of the Fee Award

5                    A contingency adjustment may be made at the lodestar phase of the court's

6    calculation or by applying a multiplier to the noncontingency lodestar calculation, but not both.

7    *Ketchum,* 24 Cal. 4th at 1133–34; *Horsford* , 132 Cal. App. 4th at 395.  In support of applying a

8    multiplier for contingency risk, California courts say the following:

9            The contingent and deferred nature of the fee award in a civil rights
             or other case with statutory attorney fees requires that the fee be
10           adjusted in some manner to reflect the fact that the fair market
             value of legal services provided on that basis is greater than the
11           equivalent  noncontingent hourly rate.

12           A lawyer who both bears the risk of not being paid and provides
             legal services is not receiving the fair market value of his work if he
13           is paid only for the second of these functions.  If he is paid no more,
             competent counsel will be reluctant to accept fee award cases.

14

15   *Id*.  Cosby cites *Crommie v. State of Cal., Pub. Utils. Comm'n*, 840 F. Supp. 719, 726 (N.D. Cal.

16   1994), to support his argument that the court should apply a contingency multiplier of two to

17   three.  Appl. #2 at 12.  But in awarding a 2.0 multiplier in *Crommie,* that court not only

18   considered that counsel took the case on a contingency basis, but also that counsel prevailed after

19   a protracted complicated three-week trial, which was exceptional in light of defense counsel's

20   excessively vexatious and often unreasonable opposition.  *Id.*

21                   As the court has noted, the appellate stage of this case was not exceptionally

22   difficult, even if protracted.  Additionally, Cosby does not argue Autozone engaged in excessive

23   or unreasonable appellate practice.  He does not question the legitimacy or veracity of Autozone's

24   appeals, arguing only that the case was made more difficult because of the appeals.  *See* Appl. #2

25   at 11.

26                   Considering the contingent nature as only a partial factor in *Crommie*'s analysis,

27   but also giving weight to the fact that counsel took Cosby's case on a contingent basis, the court

28

1  concludes a modest enhancement of 1.3 is justified.  *See Noyes v. Kelly Servs., Inc.*, No. 02–2685,

2  2008 WL 3154681, at *7 (E.D. Cal. Aug. 4, 2008) (applying 1.2–1.4 multiplier).

3  (3)   Results Obtained and Delay in Receipt of Payment

4  Cosby asks the court apply a multiplier on grounds of results obtained and delay of

5  payment.  Appl. #2 at 13–14.  Given the narrow issues raised on appeal, the results obtained,

6  although not inconsequential, also were not "beyond those that might be expected of attorneys of

7  comparable expertise or experience."  *See Ketchum*, 24 Cal. 4th at 1139.  Cosby has not shown

8  the results obtained justify a fee enhancement.

9  As for delay, Cosby cites *City of Oakland*, 203 Cal. App. 3d at 83, to argue an

10  enhancement should be applied on this ground.  In *City of Oakland*, the court enhanced counsel's

11  award based on several factors including the "extraordinary novelty and complexity of the issues

12  presented, the need for []counsel to act quickly throughout the litigation, the deferral of payment

13  of counsel's fees, and most significantly the critical importance of the litigation [] and the result

14  obtained."  *Id.* at 83.  Here, as discussed above, the court has already applied an enhancement by

15  other means, namely applying reasonable rates for the years 2014 to 2015 to all hours expended,

16  even if such hours were expended prior to 2015.  The court declines to apply an additional

17  multiplier on grounds of delay.

18  (4)   Negative Multiplier

19  Autozone argues not only should the court decline to apply any positive multiplier,

20  it should apply a negative multiplier because of plaintiff's "limited success" in the appeals

21  process.  Opp'n at 19 (citing *Chavez*, 47 Cal. 4th at 989, *Harman v. City and Cnty of S.F.*, 158

22  Cal. App. 4th 407, 425 (2007), *Sokolow v. Cnty of San Mateo*, 213 Cal. App. 3d 231, 248–49

23  (1989), *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 974–75

24  (1989)).  However, it never argues what "limited success" is, or why such an analysis is

25  appropriate.  Instead, defendants merely argue the reduction of damages on appeal constitutes

26  "limited success" for which a negative multiplier would be appropriate.  Opp'n at 19.

27  In the authority Autozone cites, a "limited success" analysis applies to cases in

28  which the plaintiff has prevailed on some claims but not others.  *See Chavez*, 47 Cal. 4th at 989.

1    Such analysis requires the consideration of both successful and unsuccessful claims.  *See id.*;

2    *Harman*, 158 Cal. App. 4th at 417 (limited success analysis requires consideration of successful

3    and unsuccessful claims); *Sokolow*, 213 Cal. App. 3d at 248 (same); *Californians for Responsible*

4    *Toxics Mgmt.*, 211 Cal. App. 3d at 975 (declining to apply a negative multiplier because

5    plaintiff's claims could not be easily segregated into successful and unsuccessful ones to which

6    hours can easily be attributed).

7            Here, Cosby prevailed on two of his five claims.  For purposes of Application #2,

8    however, defendants do not request the court reduce attorneys' fees based on the hours spent on

9    ultimately unmeritorious claims.  Instead, defendants request the court reduce attorneys' fees

10   based on the net damages award that was small in comparison to the original jury award.   The

11   cases cited by Autozone do not support this analytical approach.

12           However, as a general rule and a matter of common sense, the amount of damages

13   ultimately recovered can be considered when calculating reasonable attorney fees.  *Bucci v.*

14   *Chromalloy Am. Corp., Liberty Radiator Div.*, No. 85–8768, 1989 WL 222441, at *2 (N.D. Cal.

15   Sept. 15, 1989) (interpreting the FEHA).  A mandate that attorneys' fees be reduced based on the

16   proportion of a jury's damages award received, however, would make it "difficult if not

17   impossible for individuals with meritorious civil rights claims but relatively small potential

18   damages to obtain redress from the courts."  *Id.*

19           In *Bucci*, defendant contended plaintiff's attorneys' fees should be reduced

20   because plaintiff obtained a jury award of only $55,000 rather than the $350,000 requested in

21   closing argument.  *Id.*  The court disagreed, recognizing the significant public interest served by a

22   successful civil rights verdict, regardless of the size of the monetary award or the fact that the

23   action was brought by an individual plaintiff.  *Id.*

24           Here, as in *Bucci*, Cosby brought this action under the FEHA.  Cosby's jury

25   verdict advanced the public interest to some degree, regardless of the monetary award.  As the

26   Ninth Circuit has observed, a court "should not reduce lodestars based on relief obtained simply

27   because the amount of damages recovered on a claim was less than the amount requested."

28   *Quesada v. Thomason,* 850 F.2d 537, 538 (9th Cir. 1988).  Rather, a court should consider the

1    "important social benefits [] not reflected in nominal or relatively small damage awards."  *Id.* at

2    540.

3    These considerations persuade the court a negative multiplier is inappropriate here.

4    V.    <u>COSTS</u>

5    Cosby also requests reimbursement of costs in the amount of $29,368.38.  *See*

6    ECF Nos. 91, 203.  "An award of standard costs in federal district court is normally governed by

7    Federal Rule of Civil Procedure 54(d), even in diversity cases."  *Champion Produce, Inc. v. Ruby*

8    *Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir.2003); *see also Drumm v. Morningstar, Inc.*, 695 F.

9    Supp. 2d 1014, 1027 (N.D. Cal. 2010) ("Since the awarding of costs here is procedural, not

10   substantive, federal law governs.").  The Supreme Court has held that 28 U.S.C. §1920 "defines

11   the term 'costs' as used in Rule 54(d)."  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S.

12   437, 441 (1987).  In so doing, the Court has rejected the view that the discretion granted by Rule

13   54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920.  *Id.* at 441.

14   Travel expenses such as airfare, hotel, and rental car, are not recoverable under § 1920.  *Kern v.*

15   *Levolor Lorentzen, Inc.*, 899 F.2d 772, 795 (9th Cir. 1990); *Warkentin v. Federated Life Ins. Co.*,

16   No. 10–0221, 2012 WL 3869865, at *4 (E.D. Cal. Sept. 6, 2012).

17   As for other costs, Rule 54(d)(1) creates a presumption in favor of awarding costs

18   to a prevailing party, but the district court may refuse to award costs within its discretion.  *See*

19   Fed. R. Civ. P. 54(d)(1); *see also Champion Produce,* 342 F.3d at 1022 ("[C]osts other than

20   attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise

21   directs . . . .").  "A district court need not give affirmative reasons for awarding costs; instead, it

22   need only find the reasons for denying costs are not sufficiently persuasive to overcome the

23   presumption in favor of an award.  The presumption itself provides all the reason a court needs

24   for awarding costs."  *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp.

25   2d 1206, 1218 (E.D. Cal. 2009).

26   Autozone objects to Cosby's bill of costs on several grounds.  First, Autozone

27   objects to treating the bills of costs for Application #1 and Application #2 as separate documents

28   because they are duplicative of each other.  *See* Defs.' Obj. 2, ECF No. 207.  When Cosby filed

1    the bill of costs for Application #2 he himself labeled it a "renewed" bill of costs.  *See* ECF No.

2    203.  The two bills of costs, namely ECF Nos. 91 and 203, will be treated as one.

3            Second, Autozone objects to the total amount requested in the bill of costs.  *Id.* at

4    2.  Autozone notes the total amount for printed or electronically recorded transcripts should be

5    $17,949.44, not $19,365.23.  *Id.*  Cosby concedes $17,949.44 is the correct amount.  *See* Pl.'s

6    Reply 2, ECF No. 95.  The total amount for printed or electronically recorded transcripts is

7    $17,949.44, subject to any deductions the court deems proper.

8            Third, Autozone objects to counsels' travel costs claimed on May 12, 2009 and

9    May 26, 2009, to attend depositions of Rick Smith and Bonnie Shaw, totaling $676.40.  Defs.'

10   Obj. at 2.   As noted above, counsels' travel costs to attend the Smith and Shaw depositions will

11   be deducted from the cost total.  *See Kern, Inc.*, 899 F.2d at 795.

12           Fourth, Autozone objects to all costs associated with video transcripts of

13   depositions for Kathy Pope, Steve Bender, Sheri Lemond, and Jim Kulbacki, in the amounts of

14   $761.69, $348.80, $700.95, and $1,352.97, respectively.  *See* ECF No. 91.  Defs.' Obj. at 2.   In

15   response, plaintiff notes video depositions were used to expedite the presentation of evidence and

16   to avoid having to make witnesses appear in court.  Reply at 4.  But plaintiff provides no

17   explanation why presentation of evidence could not be achieved by paper transcripts.  *See Oyarzo

18   v. Tuolumne Fire Dist.*, No. 11–01271, 2014 WL 1757217, at *9 (E.D. Cal. Apr. 30, 2014)

19   ("Plaintiffs Hart and Oyarzo have not shown that video recording the depositions was 'necessarily

20   obtained' for use in this trial, rather than merely for the convenience of counsel."); *see also U.S.

21   ex rel. Berglund v. Boeing Co.*, No. 02–193, 2012 WL 697140, at *3 (D. Or. Feb. 29, 2012)

22   ("[Plaintiff] provides no explanation or justification for the decision to videotape Berglund's

23   deposition.").  In light of the record before the court, the court finds these expenses, totaling

24   $3,164.41, are unreasonable.

25           Fifth, Autozone objects to the costs identified for the deposition of expert Dr.

26   Marcia Nelson.  Defs.' Obj. at 2.   Autozone contends Nelson did not testify at trial, thus making

27   her costs unnecessary.  *Id.*  Dr. Nelson examined medical records during her deposition, which in

28

1  turn were used to prepare for trial and were identified for possible introduction into evidence.

2  The court concludes these costs were necessary and reasonable.

3          Sixth, Autozone objects to the costs arising from the taking of several other

4  depositions.  Specifically, Autozone objects to costs associated with (1) Nicole McCollum's

5  deposition ($1,266.70); (2) Richard Smith's deposition on January 29, 2010 ($937.75 and

6  $93.00); (2) Jim Kulbacki's deposition on October 17, 2007 ($309.40); (3) Staci Saucier's

7  deposition on October 17, 2007 ($463.45); and Brenda Granville-Brooks' deposition on

8  November 12, 2007 ($373.60).  Def.'s Obj. at 2.  Regarding Nicole McCollum's deposition,

9  Autozone notes there are two entries listed with no explanation.  Autozone also argues Richard

10  Smith's deposition was not necessary to Cosby's case, but does not explain why Smith's

11  deposition was unnecessary.  Autozone argues the Kulbacki, Saucier and Granville-Brooks

12  depositions were taken in a separate case.

13          As to McCollum's deposition, Cosby merely explains that there were two separate

14  charges related to the deposition, without clarifying why the charges accrued or how they related

15  to the litigation.  *See* Reply 3–4, ECF No. 95.  Similarly, Cosby does not explain how Smith's

16  deposition testimony related to this litigation.  As to the depositions of Kulbacki, Saucier, and

17  Granville-Brooks, they were taken three years before Cosby filed the original complaint in this

18  case.  Cosby explains counsel needed to review the deposition transcripts to "research his similar

19  claims handled by these witnesses."  Reply at 4.  This does not explain why the time billed for

20  deposing the witnesses, as opposed to time billed for reviewing their deposition transcripts, is

21  listed on the bill of costs.  Based on the record before the court, transcripts of these depositions

22  are not reasonably related to this litigation. The court deducts a total of $3,443.90 from the costs

23  for depositions of McCollum, Smith, Kulbacki, Saucier and Granville-Brooks.

24          Seventh, Autozone objects to all items described as "fees and disbursements for

25  printing," totaling $247.95.  ECF No. 93.  It argues there is no documentation to support this

26  charge, and there is no explanation why these materials had to be prepared instead of using the

27  court's overhead projector.  ECF No. 93.  In response, plaintiff has filed an invoice supporting the

28  printing fee.  ECF No. 95.  As to whether such costs were reasonable, plaintiff contends the costs

22

1   relate to the preparation of plaintiff's timeline used in his closing argument. *Id.* at 95.

2   Considering the presumption in favor of awarding costs, plaintiff's costs are not unreasonable

3   simply because there were other available means of presenting the same evidence.  The Ninth

4   Circuit has held costs for demonstrative evidence are recoverable under §1920.  S*ee Maxwell v.*

5   *Hapag-Lloyd Aktiengesellschaft, Hamburg*, 862 F.2d 767, 770 (9th Cir. 1988) ("In the context of

6   §1920, exemplification and copies of papers has been interpreted to include all types of

7   demonstrative evidence, including photographs and graphic aids.").  The court finds these costs

8   reasonable.

9   VI.    <u>SUMMARY</u>

10          Taking into account the above, the following attorneys' fees and costs may

11   reasonably be awarded based on Application #1 and Application #2.

12        A.    <u>Application #1</u>

13           1.    <u>Fee Amounts</u>

14          To recap, the following principles will be applied to determine the fee award based

15   on Application #1: (1) Earley, Moore, and Bohm will be compensated at a rate of $375 per hour;

16   (2) except that Earley will be compensated at a rate of $100 an hour for 16.5 hours spent

17   accompanying a witness to Northern California; (3) and Earley will not be compensated for 16.5

18   hours spent attending a deposition in Albuquerque, New Mexico; (4) travel time will be reduced

19   by fifty percent; (5) the lodestar for all attorneys will be reduced by ten percent across the board,

20   given the inflated and dubious fee requests; and (6) no multiplier will be applied.  *See generally*

21   Prior Order.

22          Accordingly, the court awards fees as follows, for hours expended in preparing for

23   the trial and in preparing the first application for attorneys' fees:

24          Charles E. Moore—227.8 hours between January 10, 2010 and April 19, 2010,

25   compensated at $375 per hour, totaling $85,425.  *See* Prior Order; *see also* Bohm Decl., ECF

26   No. 110-1.

27          Joseph M. Earley—148.2 hours between May 23, 2009 and April 16, 2010, less

28   16.5 hours for attending the deposition in Albuquerque, New Mexico, for a total 131.7 hours.

The court reduces Earley's hourly rate to $100 for 16.5 hours, and calculates the remaining time at $375 an hour:  (16.5 hours x $100=$1,650) + (115.2 x $375=$43,200) = $44,850.

Lawrence A. Bohm—1,458.1 hours between September 25, 2006 and April 21, 2010, compensated at $375 per hour, totaling $546,787.50.  *Id.*

Angela Williams—39.50 hours between January 8, 2007 and August 13, 2009, compensated at $100 per hour, totaling $3,950.  *Id.*

Randy Torres—298.50 hours between September 28, 2009 and April 14, 2010, compensated at $100 per hour, totaling $29,850.  *Id.*

Andrea Jennings—149.80 hours between February 25, 2010 and April 14, 2010, compensated at $100 per hour, totaling $14,980.  *Id.*

Before additional deductions, these fees amount to $725,842.50.

  2. Deductions

In accordance with the prior judge's order, the amount incurred for travel time will be reduced by fifty percent and all attorneys' fees will be reduced by ten percent.  Travel time totaled 25.8 hours for Earley at $375 an hour, totaling $9,675, and 26.3 hours for Bohm, totaling $9,862.50.  The total amount for travel time, $19,537.50, divided by 2, equals $9,768.75.

  3. Totals

Deducting this amount from $725,842.50 totals $716,073.75.  Applying a ten percent reduction across the board, the total amount is $644,466.38

  d. Application #2

The following principles are carried over in determining the fee award for Application #2: (1) travel time will be reduced by fifty percent, and (2) the lodestar for all attorneys and paralegals will be reduced by ten percent across the board.  Additionally, for the reasons discussed above, (1) Moore and Bohm will be compensated at a rate of $450 an hour; (2) Saad a rate of $300 an hour; (3) Ciarimboli a rate of $150 an hour; (4) Moore will not be compensated for 16 hours expended in attending the Ninth Circuit Boot Camp; and (5) a 1.3 multiplier will be applied.

The court awards fees as follows, for time spent in connection with the appellate process as well as preparing the second application for attorneys' fees:

### i.   Fee Amounts

Lawrence Bohm—643.3 hours between May 10, 2010 and June 1, 2014, compensated at $450 per hour, totaling $289,485.

Charles E. Moore—135.6 hours between August 24, 2010 and June 1, 2015, compensated at $450 per hour, totaling $61,020.

Bianca Saad—221.1 hours between October 12, 2011 and May 22, 2015, compensated at $300 per hour, totaling $66,330.

Kelsey K. Ciarimboli—49.3 hours between May 20, 2015 and June 2, 2015, compensated at $150 per hour, totaling $7,395.

Andrea Jennings—0.2 hours at a rate of $100 an hour, totaling $20.00.

Kim Pittner—244.6 hours at a rate of $100 an hour, totaling $24,460.

Randy Torres—133.4 hours at a rate of $100 an hour, totaling $13,340.

Before deductions, these fees amount to $462,050.

### ii.   Deductions

As the hours expended by Moore to attend the Ninth Circuit Boot camp were unreasonable, the court deducts 16 hours at Moore's rate of $450.00 per hour, totaling $7,200.

Travel time equaled 12.3 hours for Bohm (totaling $5,535), 32.0 hours for Moore (totaling $14,400), and 6.3 hours for Saad (totaling $1,890).  The total of these amounts is $10,912.50 after reducing them by fifty percent.

### iii.   Totals

Deducting the Boot Camp and half of travel hours yields $451,138.  Applying a further across the board ten percent reduction, the total is $406,024.20. Applying a positive multiplier of 1.3, the total equals $527,831.45.

1        e.   Bill of Costs

2              The total for printed or electronically recorded transcripts is $17,949.44.

3   Accordingly, the total before deductions is not $29,368.38 as stated in the bill of costs, but

4   $27,952.59.  *See* ECF Nos. 91, 203.

5              Travel costs, video deposition fees, and deposition fees for McCollum, Smith,

6   Kulbacki, Saucier and Granville-Brooks are deducted as unreasonable.  Accordingly, $7,284.71 is

7   deducted, leaving a total of $20,667.88.

8        2.   CONCLUSION

9              Cosby's Application #1 and Application #2 each are GRANTED IN PART.

10  Accordingly, the court awards $644,466.38 in fees on Application #1, and $527,831.45 for fees

11  on Application #2, for a total of $ 1,172,297.83.  The court awards $20,667.88 for costs.

12             This order resolves ECF Nos. 107 and 222.

13             IT IS SO ORDERED.

14   DATED:  April 24, 2016.

15

16             _____
                 UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

27

28

26